**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCHELE ANDREWS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:22-cv-917 |
| | ) | |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| HIGHMARK HEALTH *doing business* | ) | |
| *as* GATEWAY HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Marchele Andrews, filed suit against Defendant, Highmark Health *doing business as* Gateway Health, pursuant to the Americans with Disabilities Act (ADA), the Pennsylvania Human Relations Act (PHRA), and the Rehabilitation Act of 1973. (ECF No. 1). Presently, before the Court, is Gateway Health's Motion to Dismiss Ms. Andrews's Complaint. (ECF No. 8). The Motion to Dismiss has been fully briefed and is now ripe for decision. For the reasons that follow, Gateway Health's Motion to Dismiss will be granted.

## I.     Statement of Facts

Ms. Andrews began working for Gateway Health as an associate provider file representative. (ECF No. 1-3, at ₽ 6). During her employment, Ms. Andrews developed post traumatic stress disorder (PTSD), anxiety, and depression as a result of traumatic events that occurred outside of the workplace. (ECF No. 1-3, at ₽ 7). After developing such PTSD, anxiety, and depression conditions, Ms. Andrews continued her work at Gateway Health without any issues. (ECF No. 1-3, at ₽ 8).

Ms. Andrews took short-term disability leave from March 2019 until July 2019 for her PTSD, anxiety, and depression conditions. (ECF No. 1-3, at ₽ 11). Ms. Andrews continued to

suffer from her PTSD, anxiety, and depression conditions when she returned to work. (ECF No. 1-3, at ℙ 12).

While Ms. Andrews was on short-term disability leave, Gateway Health updated its processing systems, which changed Ms. Andrews's job duties. (ECF No. 1-3, at ℙ 13). The Complaint alleges that upon her return from work, Ms. Andrews requested additional training in the new system on numerous occasions. (ECF No. 1-3, at ℙ 14). Ms. Andrews also requested an accommodation of reduced hours and the ability to take one day off per week, if necessary. (ECF No. 1-3, at ℙ 15). Gateway Health provided Ms. Andrews her requested accommodations of a reduced work schedule and an additional day off per week. (ECF No. 1-3, at ℙ 16). Ms. Andrews requested additional accommodations to transfer to a less demanding job and that she be permitted to work from home. (ECF No. 1-3, at ℙℙ 17-18). Gateway Health denied Ms. Andrews's requests for a job transfer and to work from home. (ECF No. 1-3, at ℙ 20). The Complaint alleges that other non-disabled coworkers were permitted to work from home on a regular basis. (ECF No. 1-3, at ℙ 19). The Complaint further alleges that Ms. Andrews did not receive sufficient additional training on the new system, which was different from how other non-disabled coworkers were treated. (ECF No. 1-3, at ℙ 21).

The Complaint alleges that, following Ms. Andrews's requests for a transfer and to work from home, her supervisor and manager began to over-schedule her hours and refused to permit her to take time off from work for her PTSD, anxiety, and depression conditions. (ECF No. 1-3, at ℙ 23). The Complaint further alleges that Gateway Health began issuing warnings to Ms. Andrews that she was not meeting expectations and that her employment was in jeopardy. (ECF No. 1-3, at ℙℙ 24, 26). On November 21, 2019, Gateway Health terminated Ms. Andrews's

employment.  (ECF No. 1-3, at ⁋ 27).  Ms. Andrews filed her online EEOC charge on September 16, 2020.  (ECF No. 9-1, at 4; No. 12, at 5).

## II.    Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard.  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa.

June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015)

(quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).

### III.    Discussion

#### A.  Exhaustion of Administrative Remedies

Gateway Health argues that Ms. Andrews failed to exhaust her administrative remedies because she did not file her EEOC Complaint within the statute's 180-day deadline.  (ECF No. 9, at 6).  Ms. Andrews argues that exhaustion of administrative remedies is an affirmative defense that should not be raised at the motion to dismiss stage.  (ECF No. 12, at 3).  Ms. Andrews further argues that she was only required to file her EEOC Complaint within 300 days of the last discriminatory action.  (ECF No. 12, at 4).

It is well-established under Third Circuit law that the failure to exhaust administrative remedies is appropriately raised in and is an appropriate basis for granting a Rule 12(b)(6) motion to dismiss.  *Angelino v. New York Times Co.*, 200 F.3d 73, 87-88 (3d Cir. 1999).  Thus, the Court will analyze whether Ms. Andrews properly exhausted her administrative remedies pursuant to Rule 12(b)(6).

Title VII sets forth EEOC administrative procedures that a plaintiff must exhaust prior to bringing a civil action in court.  *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001).  The plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice.  *Id.* at 469-70.  Also, a charging party has up to 300 days after the alleged unlawful employment practice to file a charge if the charging party "initially instituted proceedings with a State or local agency."  42 U.S.C. § 2000e-5(e)(1).

To pursue administrative remedies under the PHRA, a plaintiff must file a charge with the Pennsylvania Human Relations Commission (PHRC) within 180 days of the allegedly discriminatory act.  43 Pa. Stat. Ann. § 959(a)(h).  If a claimant fails to timely initiate and exhaust the PHRC remedies in this manner, he or she cannot bring an action in court.  *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 535 (W.D. Pa. 2010).

Here, Ms. Andrews initiated her charge with the EEOC rather than the PHRC, and therefore, the 180-day deadline applies.  The Complaint alleges that Gateway Health terminated Ms. Andrews's employment on November 21, 2019.  Ms. Andrews filed her online EEOC charge on September 16, 2020, which was 300 days after she was terminated.  As Ms. Andrews did not meet the requirements for filing her EEOC charge within the 180-day time period, Counts I, II, and III of her Complaint must be dismissed for failure to exhaust administrative remedies.  Gateway Health's Motion to Dismiss Counts I, II, and III of the Complaint will be granted.  Further, any amendment would be futile.

### B.  Count I - ADA Retaliation Claim

Even if Ms. Andrews had properly exhausted her administrative remedies, her Count I, ADA Retaliation claim, would still fail on its merits.  Gateway Health argues that Ms. Andrews did not allege sufficient facts regarding her Count I, ADA Retaliation claim.  (ECF No. 9, at 15). Ms. Andrews argues that she pled sufficient facts in support of her ADA Retaliation claim. (ECF No. 12, at 10).

For an ADA Retaliation claim, the ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  The elements to

6

prove an ADA retaliation claim are: (1) the plaintiff engaged in protected conduct; (2) the

plaintiff suffered an adverse employment action by the defendant; and (3) there is a causal

relationship between them.  *Williams v. Phil. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d

Cir. 2004).  Even where a plaintiff has not pled sufficient facts to constitute a disability under the

ADA, "the ADA retaliation provision protects 'any individual' who has opposed any act or

practice made unlawful by the ADA or who has made a charge under the ADA."  *Krouse v.

American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997).  Thus, "[a]n individual who is

adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim

under the ADA."  *Id.*

To establish her claim, Ms. Andrews must first plead that she engaged in protected

conduct under the ADA.  Relevant here, an alleged request for an accommodation can qualify as

protected conduct if the plaintiff had a reasonable, good faith belief that the requested

accommodation was necessary and appropriate.  *Shellenberger v. Summit Bancorp, Inc.*, 318

F.3d 183, 191 (3d Cir. 2003).  In this case, Ms. Andrews alleges that she requested

accommodations for her PTSD, anxiety, and depression conditions; however, she did not

sufficiently plead facts surrounding her alleged accommodation requests to support her

retaliation claim.  Ms. Andrews's Complaint provides no information regarding the details of her

alleged accommodation requests.  The Complaint does not explain whether the alleged

accommodation requests were made orally or in writing or whether they were submitted to a

supervisor or to someone who was positioned to meaningfully address or respond to the requests.

The only factual details alleged in her Complaint are that she made requests to Gateway Health

to provide additional training, reduce her hours, transfer her to a new position, and allow her to

work from home.  As such, Ms. Andrews does not sufficiently allege the first element of her ADA Retaliation claim.

Second, Ms. Andrews must plead that Gateway Health took adverse employment action against her.  Ms. Andrews claims that she received warnings and was eventually terminated as a result of her protected activities of requesting accommodations for her PTSD, anxiety, and depression conditions.  Receiving warnings and eventual termination from employment can constitute adverse employment consequences for the purposes of an ADA Retaliation claim.  As such, and at this stage, Ms. Andrews's Complaint contains adequate factual material regarding the adverse employment action prong of Ms. Andrews's prima facie ADA Retaliation case.

Finally, Ms. Andrews must plead a causal link between her protected conduct and the alleged adverse employment actions taken against her.  To show the existence of a causal link, a plaintiff must plead facts showing "an unusually suggestive temporal proximity" or "a pattern of antagonism coupled with timing to establish a casual link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  While warnings and eventual termination from work constitute adverse employment actions for the purposes of a prima facie ADA Retaliation claim, beyond mere conclusory allegations, there are no allegations in the Complaint to suggest that such adverse employment actions were in any way related to Ms. Andrews's accommodation requests.  Ms. Andrews's Complaint does not adequately demonstrate a pattern of antagonism to present a causal link between Ms. Andrews's accommodation requests and the alleged adverse employment actions.  Further, the Complaint alleges that Gateway Health granted Ms. Andrews's initial accommodation requests of a reduced work schedule and an additional day off per week, if necessary.  Additionally, Ms. Andrews does not sufficiently allege facts to demonstrate a close temporal relationship between her accommodation requests and the

alleged adverse employment actions.  There are no dates alleged to relate the accommodation requests to the alleged warnings and termination.  Thus, Ms. Andrews does not sufficiently allege the causation element of her prima facie ADA Retaliation claim.  As Ms. Andrews did not plead sufficient facts concerning her Count I, ADA Retaliation claim, Gateway Health's Motion to Dismiss will be granted.

As discussed above, Ms. Andrews did not properly exhaust her administrative remedies with regard to her Count I, ADA Retaliation claim.  Thus, Ms. Andrews will not be granted leave to amend her Count I, ADA Retaliation claim, as any amendment would be futile.

### C.  Counts II, III, and IV - ADA, PHRA, and Rehabilitation Act Disability Discrimination Claims

As regards Ms. Andrews's Counts II, III, and IV, ADA, PHRA, and Rehabilitation Act Disability Discrimination claims, even if she had properly exhausted her administrative remedies, said Counts would likewise still fail on their merits.  Gateway Health argues that Ms. Andrews's has not brought forth sufficient factual allegations to show that she experienced disability discrimination.  (ECF No. 9, at 8).  Ms. Andrews argues that she pled sufficient facts in support of her Disability Discrimination claims.  (ECF No. 12, at 5).

Courts apply the same legal standard for ADA, PHRA, and Rehabilitation Act disability discrimination claims.  *Fromm v. MVM, Inc.*, 371 F. App'x 263, 269 (3d Cir. 2010).  Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  41 U.S.C. § 12112(a).  In order to establish a prima facie case of disability discrimination, a plaintiff must show that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job; and (3) he has

suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).

Turning to the first element, a disability is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA specifies that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner 'to most people in the general population.'" *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Under the second element, a "qualified individual" is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). EEOC Regulations divide the "qualified individual" inquiry into two prongs. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 19998). "First, a court must determine whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." *Id.* (citing 29 C.F.R. § 1630, app. § 1630.2(m)). "Second, it must determine whether the individual, with or without reasonable accommodation, can perform the essential functions of the position held or sought." *Id.* (citing 29 C.F.R. § 1630, app. § 1630.2(m)).

The Third Circuit Court of Appeals follows a two-step process to determine whether the individual can perform the essential functions of the job with or without a reasonable accommodation. *Id.* at 146. "First, a court must consider whether the individual can perform the essential functions of the job without accommodation. If so, the individual is qualified (and, *a fortiori*, is not entitled to accommodation)." *Id.* If the individual cannot perform the essential functions of the job without accommodation, "then the court must look to whether the individual can perform the essential functions of the job with a reasonable accommodation. If so, the individual is qualified. If not, the individual has failed to set out a necessary element of the *prima facie* case." *Id.*

A job's essential functions are defined by EEOC Regulations as those that are "fundamental" to the job rather than "marginal." *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) (citing 29 C.F.R. § 1630.2(n)(1)). Per the applicable Regulations, "a job function may be considered essential" for any of the following reasons: "(i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). The Regulations also include a list of evidence that a Court may consider in determining whether a particular function is essential:

(i)      The employer's judgment as to which functions are essential;

(ii)      Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii)      The amount of time spent on the job performing the function;

(iv)      The consequences of not requiring the incumbent to perform the function;

      (v)      The terms of a collective bargaining agreement;

      (vi)     The work experience of past incumbents in the job; and/or

      (vii)    The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).  Whether a particular function of a job is essential is "a factual determination that must be made on a case by case basis." *Skerski*, 257 F.3d at 278 (quoting 29 C.F.R. § 1630, app. § 1630.2(n)).

A reasonable accommodation under the ADA includes: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).  EEOC Regulations define a reasonable accommodation as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).

As to the third element of a plaintiff's prima facie case, an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  *Komis v. Sec'y of the U.S. Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (internal quotations omitted).  Adverse employment actions include acts related to the "hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a).

If the plaintiff establishes the prima facie case, "the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse

employment decision.  *Olson v. GE Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Once the employer has done so, the burden then shifts back to the plaintiff, who "must show by a preponderance of the evidence that the employer's proffered explanation was pretextual."  *Id.*

Under the first element of Ms. Andrews's prima facie case, Ms. Andrews must demonstrate that she is a disabled person within the meaning of the ADA.  Ms. Andrews's PTSD, anxiety, and depression conditions can be considered mental impairments under the ADA.  Here, the Complaint does not contain adequate details regarding Ms. Andrews's PTSD, anxiety, and depression to survive the present Motion to Dismiss.  There are no allegations of how Ms. Andrews's PTSD, anxiety, and depression impairs her major life activities as compared to most people in the general population.  Furthermore, Ms. Andrews's Complaint fails to specify what major life activities are impacted by said conditions.  She does not allege details or information regarding her diagnoses, associated medications, or her symptoms or limitations related to said conditions.  As such, Ms. Andrews did not sufficiently plead facts to satisfy the disability element of her prima facie Disability Discrimination claims.

Under the second element of the prima facie case, Ms. Andrews's Complaint must show that she is a qualified individual who can perform the essential functions of the job with or without a reasonable accommodation.  Again, Ms. Andrews's Complaint does not allege adequate information about her associate representative job duties and responsibilities.  Although she presents conclusory allegations that she could satisfy her job requirements with a reasonable accommodation, her Complaint contains no allegations about the position, its essential functions, or her ability to perform such functions.  Indeed, the Complaint alleges that Ms. Andrews "continued to work as an associate representative without issue" when her PTSD, anxiety, and

depression conditions first arose.  (ECF No. 1-3, at ⁋ 8).  The Complaint contains no information about how or why Ms. Andrews's PTSD, anxiety, and depression conditions eventually impacted her ability to perform the essential functions of her job or about how her requested accommodations would affect her work ability.  As such, Ms. Andrews does not sufficiently plead facts to support the second element of her prima facie Disability Discrimination claims.

Finally, for the third element, Ms. Andrews must plead that she suffered an adverse employment action as a result of discrimination for her PTSD, anxiety, and depression conditions.  Ms. Andrews claims that the warnings and her eventual termination were the adverse employment actions.  While receiving warnings and being terminated from work do constitute adverse employment actions for the purposes of a prima facie Disability Discrimination claim, Ms. Andrews does not sufficiently plead facts to support a causal link.  As such, Ms. Andrews's Counts II, III, and IV, ADA, PHRA, and Rehabilitation Act Disability Discrimination claims, will be dismissed.

As discussed above, Ms. Andrews did not properly exhaust her administrative remedies with regard to her Count II and Count III, ADA and PHRA Disability Discrimination claims.  Thus, Ms. Andrews will not be granted leave to amend said claims as they are administratively foreclosed.  However, as regards her Count IV, Rehabilitation Act claim, exhaustion of administrative remedies is not a requirement to bring such claim.  As such, and as the Court cannot say that amendment would be inequitable or futile, Ms. Andrews is granted leave to amend her Count IV, Rehabilitation Act Disability Discrimination claim.

### D.  Counts II, III, and IV - ADA, PHRA, and Rehabilitation Act Failure to Accommodate Claims

Although not specifically argued within the briefings, the Court recognizes three ADA, PHRA, and Rehabilitation Act Failure to Accommodate claims within Counts II, III, and IV,

respectively.  As regards said claims, even if Ms. Andrews had properly exhausted her administrative remedies, said claims would fail on the merits.

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Such prohibited discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilitates, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).  Once a qualified individual with a disability has requested an accommodation, the employer has a good faith duty to engage in the "interactive process" with the employee to determine whether the employee has a disability and whether a reasonable accommodation exists.  *Williams*, 380 F.3d at 772.  To support a claim for a failure to accommodate under the ADA, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated."  *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

Ms. Andrews's Complaint alleges that she requested accommodations for her PTSD, anxiety, and depression conditions.  In order to establish a Failure to Accommodate claim, Ms. Andrews must demonstrate that she is a qualified individual with a disability.  As discussed above, Ms. Andrews has not pled sufficient facts to show that her PTSD, anxiety, and depression conditions presented a disability under the ADA.  Ms. Andrews also has not pled sufficient facts to show that she is a qualified individual who could perform the essential functions of her job

with or without reasonable accommodations.  Thus, Ms. Andrews's Complaint cannot satisfy the initial requirement of her Failure to Accommodate claims.

Ms. Andrews's Complaint must also demonstrate that she requested an accommodation or assistance from Gateway Health.  As discussed above, the Complaint provides no information regarding the details of Ms. Andrews's alleged accommodation requests.  Absent such allegations, Ms. Andrews's Failure to Accommodate claims also fail as to the second element of her claim.

Third, Ms. Andrews's Complaint must demonstrate that Gateway Health did not make a good faith effort to assist her PTSD, anxiety, or depression conditions.  As discussed above, when Ms. Andrews returned to work following her short-term disability leave, she requested accommodations of reduced hours and the ability to take off one day per week, if necessary. Gateway Health provided her with such requested accommodations.  Ms. Andrews alleges that she also requested accommodations of training on the new processing system, transfer to a new job, and permission to work from home.  Other than alleging denial of these requests, the Complaint does not relay how these requests related to her conditions.  Ms. Andrews has offered conclusory allegations that similarly situated non-disabled persons were given additional training and were permitted to work from home; however, she does not provide adequate details to show that such were indeed similarly situated.  Based upon her bare, conclusory allegations, the Court cannot say at this time that Gateway Health did not make a good faith effort to accommodate Ms. Andrews's PTSD, anxiety, and depression conditions.  Thus, Ms. Andrews's Failure to Accommodate claims also fail at the third step of the *Capps* test.

Finally, Ms. Andrews's Complaint must demonstrate that she could have been easily accommodated.  As has been already discussed above, beyond mere conclusory allegations, Ms.

Andrews has provided no details about her PTSD, anxiety, and depression conditions or that Gateway Health could have easily accommodated such conditions as she requested. Thus, Ms. Andrews's Failure to Accommodate claims also fail. As Ms. Andrews did not plead sufficient facts concerning her Failure to Accommodate claims, Gateway Health's Motion to Dismiss will be granted.

As discussed above, Ms. Andrews did not properly exhaust her administrative remedies with regard to her Count II and Count III, ADA and PHRA Disability Discrimination claims. Thus, Ms. Andrews will not be granted leave to amend her Count II and Count III, ADA and PHRA Failure to Accommodate claims. However, since exhaustion of administrative remedies is not a requirement to bring suit under the Rehabilitation Act, Ms. Andrews will be granted leave to amend her Count IV, Rehabilitation Act Failure to Accommodate claim.

### E. Punitive Damages

Ms. Andrews stipulated in her brief that she does not contest Gateway Health's request to strike her claims for punitive damages at Counts I, III, and IV, without prejudice. (ECF No. 12, at 14). As such, Gateway Health's Motion to Strike Ms. Andrews's request for punitive damages at Counts I, III, and IV will be granted. Said claims will be stricken, without prejudice.

### IV. Conclusion

For the reasons stated above, Gateway Health's Motion to Dismiss will be granted as to all claims and all counts of the Complaint. Ms. Andrews may file an Amended Complaint with regard to her Count IV, Rehabilitation Act Disability Discrimination claim and Failure to Accommodate claim, by November 8, 2022. If Ms. Andrews files an Amended Complaint, Gateway Health shall file its responsive pleading within 14 days of Ms. Andrews's filing of an Amended Complaint. If no Amended Complaint is filed, all claims will have been dismissed

and the case concluded.  An appropriate Order will be entered.


DATE: <u>October 25, 2022</u>                    _____
                                                        Marilyn J. Horan
                                                        United States District Judge